Second case this morning is Church of the Little Flower v. U.S. Bank. That's case number 4120266. For the appellant, we have Robert Stewart. For the appellee, Jason Germerod. Sorry about that. Mr. Stewart, you may proceed. If it pleases the court, this case is about the concept of equitable deviation, a trust, its purpose, and its possible termination. Irma Donlan established a revocable declaration of trust. She funded the trust and picked not her own self as trustee, but a very specific corporate fiduciary as trustee to act during her lifetime and subsequent to her death within a carefully drawn 13-page document. She provided income and principal for her lifetime, including within the trust and the discretion of the trustee that she had selected to meet her needs for support. She clearly placed great confidence in that trustee. And after her death, she gave a set amount, basically income, but a set amount defined as a unit trust amount to individual beneficiaries for their lifetimes, providing that no trustee fees would be taken out of the account. During her lifetime, does the record indicate how much in fees the bank was taking? No, Your Honor. So we don't know whether the percentage that was taken when she was the beneficiary living and getting the benefits, we don't know whether that was the same then as now, nothing in the record? There's nothing in the record as to the trustee fees at that point in time. But getting back into the unit trust provisions, it does specifically say within the document that no trustee's fees are to be taken out of the unit trust amount. To reserve the trust intact, she provided a spin-thrift provision, as is common. At the death of the last individual to die, she could have caused the trust to terminate under any conditions and spin out in full to the charity. She did not. She said at that point if the assets exceed $500,000, the trust was to continue under a separate set of provisions. There is no provision within the trust document that specifically states that if the assets ever dropped during the pendency of the trust below $500,000, the trust would terminate. When the individuals died who were receiving the unit trust amount, the amounts were calculated and the trust was funded and continued. If it was in excess of $750,000, those sums at that point in time would have been spun out automatically to the charities. Within her document she said, I have provided for the larger share to Friends of Hospital Sisters of St. Francis, a division of Hospital Sisters of St. Francis Foundation, because of my belief that inasmuch as their activities cover such a wide range of charitable and religious works, they are the best able to determine how to allocate in full or in part the income so received by them. The income was divided 20% to the Church of Little Flower, 20% to St. Joseph's Home, and 60% to the Friends of the Hospital Sisters of St. Francis. Subsequent to the termination of the unit trust provisions, there was no provision at that time to reduce the income to be paid out to the charities. There was no provision not to reduce the charitable distributions by the trustees as had occurred under the provisions when the unit trust was in effect. The powers include power of investment, reinvestment of trust property and bonds, including time deposits and other accounts within the corporate trustee. The trust language states that the trustee's exercise or non-exercise of powers and discretions in good faith shall be conclusive. The certificate of the trustee acting in compliance shall fully protect all persons dealing with the trustee. The trust contains the Spendthrift Laws, protecting and prohibiting the beneficiary from alienating an interest or having creditors reach into the trust corpus. The trust provides for merger and transfers of successor trustees. The trial court, in the order that is being appealed from, stated at page 3, In this case it is clear the settlor considered the possibility that it would be in the best interest of the beneficiaries that the trust be terminated and the beneficiaries be given the value of the trust in a lump sum. In 1991 the settlor set this amount at $500,000. The purpose of the trust, according to the court, is not to have the proceeds disproportionately eaten by bank fees, but rather to allocate funds for the benefit of the beneficiaries. Given the settlor's intent of establishing a threshold level to cause the trust to terminate, it is inconceivable that the settlor would have unreasonably intended for the trustee to collect more in administration fees than two of the beneficiaries received in actual income. Then we get into the concept of equitable deviation and the definition within the restatement. The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust. If it appears to the court that compliance is impossible or illegal, or that owing to circumstance not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust. In the Donlan case, compliance is not impossible. Compliance is not illegal. And we believe that there is no circumstance not known to the settlor and not anticipated by him where compliance would defeat or substantially impair the accomplishment of the purpose of the trust. Clearly, the settlor contemplated reasonable compensation in trusteeship. Does the concept of equitable deviation contemplate the termination of a trust? Your Honor, in my feeling, I do not believe the concept of equitable deviation contemplates full termination of a trust unless it was illegal or the charity had failed to exist, and then you would be over into side prey. But equitable deviation means, in my feeling and reading the restatement and the cases, that you vary a term within the administration of the trust and you don't fully terminate it. I noticed in your reply brief you say the concept of equitable deviation was discussed by many courts but has never been applied in any case in the state of Illinois. Is that accurate? I've read the cases cited by the plaintiff. I have searched. I do not find any case that applied. They discussed the terms and said this is a concept, but I've never seen it applied in any case in the state of Illinois. Is there any case in the state of Illinois that says we recognize that equitable deviation can be a cause of action for a beneficiary in a situation like this? I believe the plaintiff has cited, I think it's the Burr case, where it said there is a cause of action for equitable deviation, but I've never seen it applied in the facts. I've never seen where it's come down. I've seen it argued within the case and then it comes down on side prey or other... So you're saying the Burr case makes that legal determination but then doesn't actually use equitable deviation? Correct. I think trusts are very sacred to the courts. When you're dealing with them, side prey has been the normal doctrine that we have seen. Charitable purposes and the intent to carry out a charitable purpose. And in discussion on the side prey doctrine, which has been there for over a hundred years, the authorities cited in the briefs, the Thorn case, the authorities consistently state that the power to break in upon the terms of a trust should be exercised with great caution. And Hinsdale, which is also cited by the plaintiff and our side also, where a literal execution of the charity becomes inexpedient or impractical and the settlor has manifested a general intention to devote the property to charitable purposes, the trust will not be permitted to fail but the court will execute it side prey. The Offerman case, in addition, discusses equitable deviation. In addition, equitable deviation is only proper when literal compliance with the terms of the trust is impossible as a result of an unforeseen condition. If a beneficiary wants to challenge the trustee's fees as being unreasonable and unnecessary, how do they go about doing so? I think in this case, and we attempted to bring this before the court, the beneficiary has a right to petition the court sitting in chancery to review the accountings and to review the reasonable compensation and how that compensation is determined. So it would be in the nature of a petition for accounting from trustee, trust number whatever? Accounting or surcharge to recover back improperly paid or excessive fees. And as I understand, that did not happen here? That did not happen. The Outfit case, which was stated and argued on both sides, stated that the courts are slow to exercise their power even to modify the terms of the trust, much less terminate the trust, modify the terms of the trust. And will only do so when it clearly appears to be necessary. You raised the question of full termination and equitable deviation. The court had the ability to examine the reasonable compensation, or could have. They could have brought that. The court had the right to direct out that the funds be distributed into an endowment or into the hands of the charities subject to the terms and provisions of the trust. Or remove the trustee and appoint a new one. But what the charities were seeking to do in this case is fully terminate the trust and put it into the hands of the charities. We don't think the doctrine of equitable deviation goes that far. The trust purpose. Settler set a determination of the assets to fund an ongoing charitable trust. It's really set up into three segments within this document. During the lifetime of the settlor, she was trying to make sure that her needs were met by the trustee that she selected. Income was to go to her and the principal if it was necessary for support in the discretion of the trustee. If it meant every penny of the trust was expended for the settlor's needs, that's where it should go. Phase two of this trust was the unitrust provision. She had friends and relatives that she wanted to support. Under the provisions of the Internal Revenue Code, she had to set it up in the form of a unitrust. Charitable remainder unitrust. And she used the unitrust amount, but she carefully crafted that. And under that in phase two, that 7% of the net fair market value every year went out to the recipients, the individuals receiving the unitrust amount. No portion of the trustees' fees could affect or reduce the 7% that was paid out. That was very specific in the document. Phase three, on the death of the last of those unitrust recipients, the trustee was to sit down and determine how much do we have in assets. If it's less than $500,000, it's spun out immediately to the charities. If it's in excess of that, the trust continues under new terms and provisions. If it's actually at that point in time in excess of $750,000, the charities get that free and clear of further restriction. So if it's between $500,000 and $750,000 on the death of the last unitrust recipient, the trust gets established in perpetuity for the benefit of these charities. To receive regular payments. If this rises above $750,000, which if we reverse, we all hope that it will, we hope the market will do that, does the excess over the $750,000, is it an immediate distribution without fees or are the fees calculated as part of managing the whole thing? If you look at the trust document, there's only one time where the figures of $500,000 and $750,000 come into play. At the death of the last of the unitrust beneficiaries or recipients, the trustee sits down and looks at the asset values. If it's below $500,000, boom, those get paid out. If it's over $750,000, anything in excess of $750,000 goes out. So that $750,000 doesn't mean anything anymore? The $500,000, the $750,000 doesn't mean anything anymore. It's not an automatic payout if the assets grow to $800,000. Trust doesn't say that. Maybe I misunderstood you.  If you look at the trust document, it says only at the time of the death of the last of the unitrust individuals is the $500,000 taken into account. It doesn't continue. If it dropped tomorrow to $450,000, the trust does not provide that it is to be paid out to the charities. There's no specific provision. Certainly we wouldn't tolerate an absurd result. Say it dropped to $10,000, we wouldn't force the trust to keep an existence there. I acknowledge that. How would it be terminated? Because you've argued earlier that under the theory of advance tariff, equitable deviation, you can't terminate the trust. There are provisions under the Charitable Trust Act that I have utilized for this very institution. So you're saying the trustee would have to terminate it? Technically, it can be done two ways. The trustee could go into court and petition the court and chancery or the beneficiaries to terminate the trust. Or to select a different trustee or to channel it out to the charities under the terms and provisions of the trust restrictions. So that they would place it in their own endowment, use only the income from that for their charitable purposes. I've seen that fashion in several different cases. You suggested both in your opening brief and reply brief that it may have, for lack of a better way to express it, been a good idea to hear from the drafter, the attorney of the trust instrument. But yet, as opposing counsel pointed out, you still argue for summary judgment. So I guess I'm asking, which is it? Would it be better for the trial court to hear for ruling on a motion for summary judgment from the attorney who drafted the trust? I think that the trust speaks for itself. I truly do. But the court determined that the settlor's intent was that the charities allocate these assets. And based on that one argument within the court's order, I found that at that point in time, the drafting attorney might have been of assistance. But I think the document speaks for itself. From the standpoint of the settlor clearly contemplated trustees' fees in regard to the unit trust. And during that time frame, the drafting attorney and the settlor could have said after the charities, or during that third period when it's strictly for the benefit of the charities, they shall receive the gross income unadjusted by any trustees' fees. Could have said that, but didn't. Okay. Did the bank get a – was there a succession during Ms. Donald's lifetime to U.S. Bank, or did that occur after she died? Unfortunately, we're dealing with banks that – and this bank has been First National Bank, First Bank, Mercantile, U.S. Bank, series of mergers, but I can't answer that one. Okay. Does that play into – does that ever play into – I'm old enough that when you walk into the bank and you wanted to make a trust or you wanted a loan, you probably talked to the guy that founded the bank. Or his brother. And that's who the bank was. And now the bank is some entity in Kansas City or New Jersey or wherever. Justice, I think we're fortunate in Springfield. If I look at the personnel within U.S. Bank, the individual in charge of this account has been there over 20 years. Well, that's not very long. In regard to this trust, I think it is. Well, perhaps so. So it would have carried through the system. Well, I mean, the – I mean, it's just an interesting aside, I suppose. The settler's intent was, my hometown bank will be the trustee. And does anybody ever talk about that? Yes. Okay. We do quite a bit. Counsel, you'll have rebuttal. Thank you. Thank you. Please proceed. Thank you. Justice Turner, Justice Kinect, Justice Cook, Mr. Stewart, and the police court, my name is Jason Grumrun. I'm here on behalf of the Church School of Law. I believe I have heard multiple justices from this court give the same advice to attorneys relating to oral arguments that you've already read the briefs. So I don't need to repeat everything. Just give your best argument and then sit down. I will try to follow that advice today. I'd like to make a few points and then get to my main argument of satisfaction of the elements. One of U.S. banks' main arguments is that the trial court did not have authority to grant relief under equitable deviation because there is no precedent with a similar set of facts. That is just incorrect because this is an equity case and it is a maximum of equity that you do not need a precedent with a similar set of facts in order to grant relief. A court of chancery will grant relief when the natural principles of justice require it. So I do not think that should be, I think that argument should be ignored. Equitable deviation is also a very new cause of action in Illinois. It was just established in 1981 by the Illinois Supreme Court. Since that time, there have only been three cases that even discuss it. And it is correct that it has been recognized, but just the facts of the case that came up on appeal did not satisfy the requirements for equitable deviation. That doesn't mean it is not a legally cognizable cause of action. So the argument that they had no authority to grant that because there is no precedent, it should just be ignored. Second, the Illinois Attorney General's Office, Charitable Trust Bureau, as a representative of the people of Illinois, is charged with supervising all charitable trusts in Illinois and is therefore a necessary party in all cases involving charitable trusts. In this case, the Attorney General's Office agreed with the trial court and with Churchill Little Flower that the elements of equitable deviation were satisfied, that it would save charitable assets and would be in the best interest of the charities and the people of the state of Illinois as the ultimate beneficiary of those charities to terminate the trust and to distribute the assets to the charities. And it should be noted that right now, because you were speaking about this before, the trust could be terminated right now pursuant to the Charitable Trust Act if the trustee would just agree to it. It requires the consent of the trustee, it requires the consent of the Illinois Attorney General, if the expenses of administration exceed 25% of the income. The article that kicked in after the last to die of the individual beneficiaries happened in late 2005. We did discovery in this case for all of 2006 through 2010. So based on all of those numbers, the expenses account for 33% of the income generated by this trust during that period. So it is well above the 25% mark in the Charitable Trust Act. Churchill Little Flower strongly believes that the trustee refuses to terminate the trust in the best interest of the beneficiaries in its own interest, in its own interest of continuing to generate the income from this trust. It is also relevant that the trustee has a duty to defend the trust at the trial court level only. It has now been ordered by the trial court, and the Illinois Attorney General has told them that it would be in the best interest and it would further the intent of the set law to terminate the trust. Their response was, we're going to appeal it. So they have no duty to defend the trust on appeal. So at this point they're acting on their own behalf. We touch on this as well because in the reply brief they said that in support of their argument that the set law anticipated the amount of the fees, that the set law specifically picked U.S. Bank. It did not specifically pick U.S. Bank. It picked the hometown, regional, small bank of First National Bank of Springfield. That is not the same bank that we have today. Whatever mergers have happened since then, U.S. Bank is the fifth or sixth largest commercial bank in the country based on assets. It is not the same bank as First National Bank of Springfield. You did cover that the termination provision, because I believe both U.S. Bank and the trial court misinterpreted it at the trial level. Yeah, if the assets drop below $500,000, it doesn't matter anymore. It only mattered when the last of the individual beneficiaries died. So this trust, if you reverse, or if you remand and it goes back to the trial court, this trust is going to continue until the assets are all gone. So it's going to continue basically forever. I mean, however long it takes to run down $600,000 is how long this trust will continue. He was saying, yes, it can be terminated pursuant to the Charitable Trust Act. They refused to do it. It already meets the requirements to terminate it under the Charitable Trust Act. They refused to do it. He said the beneficiaries can go into Chancery Court to terminate the trust. That's what we did. This is our argument. We can't go in on any other basis. This is the only basis that we can go in to terminate the trust. It's a relatively new doctrine, and most of the case law that he's citing that is very strict in its requirements predates the Burvey-Brooks case in 1981 that established equitable deviation. So you should look at what the requirements specifically are for equitable deviation and not what the reformation or construction suit requirements are that predate that. Those are irrelevant. Related to the overall argument, related to the elements, he's already stated what the requirements are. Well, if you could, your client for the last several years has got, it looks like on average about $5,500 a year. Correct. What is the crux of your complaint then? Because your client continues to get an annual benefit. True. I know it's not $500,000, but it is a substantial amount of money. I'm arguing the elements of equitable deviation. I'm saying the said lawyer did not anticipate this size of trustees' fees, especially when the trustee is filing tax returns saying it's spending zero hours a week on average. Okay. Well, I guess what I believe to be the gravamen of your argument is that the fees of the bank are greater than the amount, the benefit is to your client. Am I wrong? No, it's that they're greater than what the said lawyer anticipated and that as a result of that, the purpose, yeah, eventually, the purpose of the trust to provide payments to beneficiaries is substantially impaired. So it's really a judgment call. Well, if there had been like 20 beneficiaries. True. So they all get 5%. And then the administrative fee is always going to be greater than the amount that any one beneficiary would take. I agree. It's not just that they're getting more than our client is receiving in benefits. It's all of the circumstances together. It's a totality of the circumstances. So if there were 20 beneficiaries, I would be making the same argument. I'm saying said lawyer did not anticipate $9,000 in trustees' fees every year when the trustee really isn't working to earn those fees. And it is inhibiting the purpose of the trust, which is to benefit beneficiaries. It substantially is because the other thing that said lawyer did not anticipate was the trust agreement was to provide income, says it's to provide income only to the three beneficiaries. Well, since that time, the IRS rules have changed and it is required that you have to distribute 5% every year of the total amount of the trust. And if you don't follow that, then you're hit with heavy penalties. 5% of the assets. Of the total amount of the assets have to be distributed each year. Well, within that amount that is distributed each year, the administrative fees are included in that. So of that 5% each year, they are taking 30%, which only leaves 70% for the beneficiaries, which as a 20% beneficiary means my client is only getting 14%. And the point is, they really haven't earned those fees. The settlor would not have anticipated that they would charge those fees. But isn't your client getting more under that 5% rule than it would have if it just got its proportionate distribution of the income? Yes, and I think that is why the case actually looks better for U.S. Bank than it really would. If you were saying we wouldn't accept an absurd result, if you actually followed the language of the trust, the Church of Little Flowers would be getting maybe $2,500 a year. And so the trustee would be paying itself three and a half times what the Church of Little Flowers is getting. Because the average income is about $25,000 a year. So they are charging $8,000 to $9,000 in fees with another $2,000 in expenses. So if you subtract all the expenses from the income first and then multiply by 20%, my client would only be getting $2,500 or $3,000. So that would be actually the intent of the settlor. And I think that actually supports a better argument that we are getting to an absurd result here. And that the trust should not benefit the trustee more than the beneficiaries, more than the settlor intended. Well, except the settlor also apparently intended, if certain things occurred, that this would be a permanent memorial to her in the sense that it would be a permanent stream of income to the three beneficiaries. I agree. I also don't think the settlor anticipated that the trust would only be able to generate, say, 3% income each year and that the trustee would charge 1.5% percentage basis fees. What the trial court relied on and what was my main point, because yes, I don't think all charitable beneficiaries should be able to just break in on a charitable trust arguing equitable deviation that we should terminate the trust because the trustee's fees are too big. The settlor in this case actually included a termination provision in the trust. And I don't think it was that carefully drafted because what is the logical inference to draw from that provision? She said if it's less than $500,000 at the time of the last individual beneficiary to die, to me that means I don't want an inefficient trust to continue when the assets of the trust are too small relative to the administration expenses. To me that's the logical inference to draw from that. The assets are still above $500,000, aren't they? Yes. Well then they actually look like now they're going the other way. Yes, I mean we are. After a recession. Improving, correct. Well, assuming, shouldn't we assume $500,000 was the dividing line to test the settlor group? Yes, but I think that number was picked based on her estimate of much lower transaction costs, much lower administration fees charged by the trustee because that's a very round number to pick. And so my argument is she picked that round number. It means she didn't want an inefficient trust. It was picked in 1991, a long time ago. She didn't know what the trustee's fees were going to be charged. And the whole purpose of her trust is to benefit the charities. Does she really want to pay U.S. Bank $9,000 a year when the trust is on autopilot and they're really not spending very much time working on it and it's just a percentage fee basis? That's my argument. I don't think so. That's not what the settlor wanted. You make a good argument. You're very articulate. But I can't help but notice many times during your argument you say, I think the settlor intended. I think the settlor wanted. How do we know that? That's the question you have to ask yourself in an equitable deviation. I'm asking myself that right now. That's the language of the Illinois Supreme Court. Would it appear clear to the court that compliance due to circumstances not anticipated by the settlor, that compliance would defeat or substantially impair the accomplishment of the purpose of the trust? So it's the same as reformation cases. The court is put in the position of the settlor. And yes, you look at the language of the trust, but you also have to make just a reasonableness question. Does this make sense based on all the evidence I have? Do I think the settlor would want this? You have to ask. You're forced into that question. That's the nature of the claim. It really is. That's just the nature of the claim. How else would you be able to say it? Because if the point is that equitable deviation, the whole point is she didn't anticipate something, so she didn't put any provisions relating to those circumstances in the trust. That's the whole point of the claim. So clearly most of the time there's not going to be anything in the trust that relates to the question that we're talking about because the whole point is she didn't anticipate it. In this case, I think this is a very good case and would not set a bad precedent because the settlor already included a termination provision. And your question of whether a trust should be terminated pursuant to equitable deviation, the administrative terms are just supposed to be changed under equitable deviation. It's different from type, right, that relates to purposes of the trust change. In this case, the administrative terms included a termination provision. So what the court is really doing is just changing the administrative provisions to change the conditions under which the trust should be terminated based on what the court thinks the settlor would have wanted, based on the intent of the settlor, as found by reading the trust agreement and just using common sense. What if we find that what the trust or settlor wanted is ambiguous? Do you lose? You can remand it to Esponte. I think he's waived his right under the Invited Error Doctrine and under judicial estoppel because they moved for summary judgment before I did. I want it to continue discovery. You're asking about do we know what the trustee's fees when she was still alive was. I would like to know what other amounts of income U.S. Bank generates from this trust that are not in the record because they invest a large amount of the trust assets in their own proprietary mutual funds. They're making a lot more money off of this trust than is in the record. I don't know what that is and that's not in the record. But if I would have had time to continue with more discovery, I would have found that out. You made an interesting comment earlier. I want you to come back to it. You said the bank is acting on its own behalf. To me that suggests they're acting for their own self-interest so they can get their fees and they're not acting on behalf of the set floor. Is that your argument? Yes, and I would support that by saying they have been ordered by a trial court to terminate the trust. And the Illinois Attorney General's Office, which is charged with supervising charitable trusts, agrees with that. Who's representing the set floor? The trustee, but the duty to defend ends at the trial court level. There is not a duty to defend a trust at the appellate court level. Once the justice system has reached a decision as to what is the right thing to do with the trust, the trustee's duty to defend the trust ends. That's my understanding of the law, is that the duty to defend a trust by the trustee does not go to the appellate court level. So yes, I do think they're here on their own behalf and I do think they're acting in their own self-interest because, like I said, this trust could have been terminated under the Charitable Trust Act already if they would just agree to it. We're at 33%. The Charitable Trust Act just requires 25%. So under the Charitable Trust Act, it's already inefficient. So under your theory, if there were $20 million and the fees were small, but for some reason they were able to convince the trial court that the trust should be terminated, no right of review, they're just stuck with it? The trustee? Yes. I think that's what you just said. Yes. Because the justice system has given a decision on that and they have no duty to appeal that. Well, we're part of the justice system, too. Right. I am advocating for my side and the case law that I've reviewed says that a duty to defend a trust does not go on to the appellate court level. Once a court has said the best interests of the beneficiaries would be to do this, or the settler would have wanted this, then the trustee should follow that court order. Well, there's a difference between saying there's not a duty and that the trustees still shouldn't exercise some degree of independent judgment on behalf of what they think. I agree. I am just skeptical that that is actually the U.S. Bank's interest in appealing this matter. I don't know that they are very, very interested in what the wishes of Irma Donnellan were in 1991. Thank you.  Rebuttal, please. First, I would present that there is a duty, I feel, on behalf of the trustee to represent the settler and carry through what they perceive as being the intent of the settler throughout the entire terms of the trust, and that is the reason why we are here. I think at various points within the various pleadings that have been filed, there are broad-brush statements about the fees being charged and fees assumed or implications of additional fees, and to me that gets into a reasonable compensation argument, not the argument as to equitable deviation and a question of the size of the fee versus the size of the distribution to the income beneficiary. But I think it comes down to the plaintiff's statement on page 20 of its brief. In this case, the purpose of the trust is clearly to provide regular distributions to the beneficiaries, regular distributions to the beneficiaries, not one distribution, regular distributions to the beneficiaries. And the plaintiff says that the charities are, quote, not irresponsible young adults who need the trust to prevent them from squandering their inheritance. These charities are fairly sophisticated and capable of independently investing the trust assets wisely such that the gift from the settler will be prudently utilized. But that's not what they're asking for. They're asking for immediate distribution of all assets free and clear of any restriction whatsoever. And this is where I think the trial court, one element that they have used or the trial court have used discretion. Full termination of this trust without any restriction. There will be no other payments, and six months from now, those funds could be dissipated. The flagship of Hospital Sisters, St. John's Hospital, lost money last year. We don't know where the medical needs will be, and we don't know the status of hospitals. But what the settlor intended was not only for the charity, or charities that she felt would make sure that on an annual basis they would determine the needs of her community and distribute it in accordance with their needs, but it would be there for generations to come. Not just for the charity in future generations, but for the recipients of the charitable distributions. For that reason, and the others that we have stated, I think the four corners show contemplation by the settlor of trustees' fees and their issues, and their payment in effect on the recipients witness the unit trust provisions versus the final.  This settlor was merely providing funds out for allocation by the three charities. It was to provide an insulation of those funds within the trust itself. It was to provide for a corporate institution to invest and make that money grow and last for generations to come. Totally different intent than what the plaintiff is arguing and what the court found. For those reasons, we feel that it should be revamped. Thank you. Okay. An interesting case. Thanks to both of you. The case is submitted, and the court stands in recess.